## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

BULLIE GUMANI, on behalf of
himself and all others similarly situated,

    Plaintiff,

v.         **MEMORANDUM OF LAW & ORDER**
          Civil File No. 17-2065 (MJD/BRT)

HUNTINGTON DEBT HOLDINGS, LLC,
and CENTRAL MEDIATION SERVICES,

    Defendants.

Mark L. Vavreck, Gonko & Vavreck, PLLC, and Thomas J. Lyons , Jr., Consumer
Justice Center P.A., Counsel for Plaintiff.

No appearance for Defendants.

## I. INTRODUCTION

 This matter is before the Court on Plaintiff's Amended Motion for Default

Judgment.  [Docket No. 17]  The Court heard oral argument on May 17, 2018.

## II. BACKGROUND

### A. Factual Background

 Plaintiff Bullie Gumani is a natural person who lives in Hennepin County

Minnesota.  (Compl. ¶ 4.)  Gumani took out a payday loan which was primarily

for personal, family, or household purposes.  (<u>Id.</u> ¶ 9.)  He became delinquent in

paying that debt.  (<u>Id.</u> ¶ 10.)

Gumani's debt was assigned for collection to Defendant Huntington Debt

Holdings, LLC ("Huntington"), a New York corporate entity located in New

York.  (Compl. ¶¶ 5, 11.)  Huntington regularly collects or attempts to collect

consumer debts in Minnesota through U.S. mail or the telephone.  (<u>Id.</u> ¶¶ 6, 12.)

Defendant Central Mediation Services ("CMS") is a corporate entity with

an unknown address.  (Compl. ¶ 7.)  CMS regularly collections or attempts to

collect debts through U.S. mail or the telephone.  (<u>Id.</u> ¶ 8.)

In November 2016, Huntington and CMS called Gumani at his place of

work to attempt to collect the debt.  (Compl. ¶ 23.)  During that conversation,

Gumani told them to stop calling him at work.  (<u>Id.</u> ¶ 24.)

Gumani asserts that Defendants demanded money from him to which they

were not entitled and made threats against him for the purpose of extorting the

payment of funds.  (Compl. ¶¶ 21-22.)

On January 10, 2017, Defendants left a message on Gumani's work

telephone.  (Compl. ¶ 25.)  On January 11, 2017, they left a message on his cell

phone.  (Id. ¶ 26.)  On January 12, 2017, Defendants left another message on his cell phone.  (Id. ¶ 27.)

In all of the messages left on Gumani's phone, Defendants failed to meaningfully identify themselves.  (Compl. ¶ 28.)  They also did not state that the communication was from a debt collector.  (Id. ¶ 29.)  They did not state that the communication was an attempt to collect a debt.  (Id. ¶ 30.)

Defendants did not send Gumani a statement of his rights.  (Compl. ¶ 34.) They did not send him a 30-day validation notice within 5 days of the initial communication.  (Id. ¶ 36.)  Gumani asserts that, because he did not receive notice within 5 days, he did not know of his right to dispute the alleged debt, even though he has concerns about the underlying debt.  (Id. ¶ 39.)

## B.    Procedural History

On June 15, 2017, Gumani filed a Complaint in this Court against Huntington and CMS.  [Docket No. 1]  Gumani's Complaint asserts Count 1: Violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.; and Count 2: Invasion of Privacy.  It seeks an award of actual damages, statutory damages, and costs and attorneys' fees.

Gumani has not yet effectuated service on CMS.  ([Docket No. 11] Pl. Brief at 1.)

On June 15, 2017, Plaintiff served Huntington through its registered agent Corporation Service Company. [Docket No. 4-1] Huntington's answer was due by July 6, 207. Huntington has failed to plead or otherwise defend this action. On September 15, 2017, Gumani filed an Application for Entry of Default against Huntington [Docket No. 6], which was granted on September 18, 2017 [Docket No. 8].

Gumani now moves for default judgment. He requests statutory damages of $1,000.00, attorneys' fees of $7,926.88, and costs of $545.00, for a total judgment amount of $9,471.88.

## III.    DISCUSSION

### A.    Default Standard

Huntington has failed to answer or otherwise appear in this matter, and the Clerk's Office has entered default against it; thus, this matter is ripe for default judgment. Fed. R. Civ. P. 55. CMS has not been served, and no Clerk's Entry of Default has been entered against CMS. Thus, default judgment against CMS is not appropriate at this stage.

As to Huntington, the Court accepts the factual allegations in the Complaint as true because "[a] default judgment entered by the court binds the party facing the default as having admitted all of the well pleaded allegations in

the plaintiff's complaint." Angelo Iafrate Constr., LLC v. Potashnick Constr., Inc.,

370 F.3d 715, 722 (8th Cir. 2004) (citations omitted).

> When a default judgment is entered on a claim for an indefinite or
> uncertain amount of damages, facts alleged in the complaint are
> taken as true, except facts relating to the amount of damages, which
> must be proved in a supplemental hearing or proceeding.

Everyday Learning Corp. v. Larson, 242 F.3d 815, 818 (8th Cir. 2001) (citations

omitted).

### B.    FDCPA

> The FDCPA was passed to eliminate abusive debt collection
> practices.  It broadly prohibits a debt collector from making a false,
> deceptive or misleading representation or means in connection with
> the collection of any debt, and from using unfair or unconscionable
> means to collect or attempt to collect any debt.

Haney v. Portfolio Recovery Assocs., L.L.C., 837 F.3d 918, 924 (8th Cir. 2016)

(citations omitted).

The debt about which Defendants called Gumani was a "debt" under the

FDCPA, because it was an obligation to pay money arising out of a transaction in

which the money that was the subject of the transaction was primarily for

personal, family or household purposes and went into default for failure to pay.

(Compl. ¶¶ 9-10.)  See also 15 U.S.C. § 1692a(5).

Gumani is a natural person and, thus, a "consumer" under the FDCPA. (Compl. ¶ 4.) See also 15 U.S.C. § 1692a(3). Additionally, Huntington is "debt collector" under the FDCPA. (Compl. ¶ 6.) See also 15 U.S.C. § 1692a(6).

The Court finds that Huntington violated the FDCPA. Specifically, Gumani asserts that Huntington failed to identify itself in calls, and 15 U.S.C. § 1692d(6) provides that a debt collector cannot engage in "the placement of telephone calls without meaningful disclosure of the caller's identity." He also claims that Huntington failed to state that the calls were from a debt collector and were an attempt to collect a debt, and § 1692e(11) prohibits "[t]he failure to disclose . . . in that initial oral communication [with the consumer], that the debt collector is attempting to collect a debt." Finally, Gumani asserts that Huntington failed to send him a 30-day validation notice within 5 days of the initial communication, and § 1692g(a) provides that "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing [certain information]."

Gumani requests statutory damages of $1,000 on the FDCPA violations.  In determining the amount of statutory damages to award, the Court must consider: "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional."  15 U.S.C. § 1692k(b)(1).  Because the violations by Huntington were flagrant and repeated, an award of $1,000.00 is appropriate.

### C.    Invasion of Privacy

Gumani also claims that Huntington committed the tort of invasion of privacy and intrusion upon seclusion.  However, he does not seek damages for this count, only a finding of liability.

A claim for invasion of privacy, intrusion upon seclusion, requires that "one intentionally intrude[], physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person."  Lake v. Wal–Mart Stores, Inc., 582 N.W.2d 231, 233 (Minn.1998) (footnote omitted). "The tort has three elements: (a) an intrusion; (b) that is highly offensive; and (c) into some matter in which a person has a legitimate expectation of privacy."  Swarthout v. Mut. Serv. Life Ins. Co., 632 N.W.2d 741, 744 (Minn. Ct. App. 2001).  To meet the "highly offensive" threshold, a plaintiff must show that the interference is "substantial," i.e., "of a

7

kind that would be highly offensive to the ordinary reasonable person, as the result of conduct to which the reasonable person would strongly object." Id. at 745 (citation omitted).

The Court holds that, based on the facts alleged in the Complaint, Huntington is not liable for invasion of privacy. The cases upon which Gumani relies are highly distinguishable. In Bauer v. Ford Motor Credit Co., the debt collector was informed that it was pursuing the wrong individuals by the plaintiffs, the sheriff, an attorney, the postmaster, neighbors, and relatives, yet it persisted, culminating in attempting to execute a repossession at the plaintiffs' home. 149 F. Supp. 2d 1106, 1111 (D. Minn. 2001). Here, Gumani asserts a total of four telephone calls by Defendants. He asserts that Defendants called his work once, left one message on his work phone after he told them not to, and left two messages on his cell phone. This is not behavior that would be highly offensive to the ordinary reasonable person. As the Bauer court noted, "a reasonable person should expect that a company charged with collecting on a delinquent account would display a certain degree of persistence when the person on the other end of the telephone denies responsibility for a debt." 149 F. Supp. 2d at 1111. See also Carlson v. First Revenue Assur., No. CIV. 02-209

(DWF/AJB), 2002 WL 31866305, at *3 (D. Minn. Dec. 19, 2002) (holding that, when debt collector "sent six dunning letters to [plaintiff] over the course of five months" and "did not receive information about the debt from third parties, only from the alleged debtor himself, [] the quantity and quality of the contacts [the debt collector] made were so minimal that, as a matter of law, they cannot be construed as highly offensive"); Radford v. Miller, No. A11-298, 2012 WL 1380262, at *3 (Minn. Ct. App. Apr. 23, 2012) ("[T]here is no liability for knocking at the plaintiff's door, or calling . . . on one occasion or even two or three, to demand payment of a debt.  It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded.") (quoting Restatement (Second) of Torts § 652B, cmt. d).  Therefore, the Court denies default judgment as to the invasion of privacy claim.

### D.    Attorneys' Fees

Under the FDCPA, "in the case of any successful action to enforce the foregoing liability, [a successful plaintiff is entitled to recover] the costs of the action, together with a reasonable attorney's fee as determined by the court."  15 U.S.C. § 1692k(a)(3).  The award of attorneys' fees is mandatory.  Iverson v.

Greystone All., LLC, No. CIV. 14-1027 (ADM/HB), 2015 WL 4635840, at *3 (D.

Minn. Aug. 4, 2015).

"Many District Courts apply a lodestar method [to calculate attorney's fees

in FDCPA cases]. . . ." Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,

559 U.S. 573, 599 n.16 (2010). "The most useful starting point for determining the

amount of a reasonable fee is the number of hours reasonably expended on the

litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S.

424, 433 (1983). Other factors that the Court may consider include:

> (1) the time and labor required; (2) the novelty and difficulty of the
> questions; (3) the skill requisite to perform the legal service properly;
> (4) the preclusion of employment by the attorney due to acceptance
> of the case; (5) the customary fee; (6) whether the fee is fixed or
> contingent; (7) time limitations imposed by the client or the
> circumstances; (8) the amount involved and the results obtained; (9)
> the experience, reputation, and ability of the attorneys; (10) the
> "undesirability" of the case; (11) the nature and length of the
> professional relationship with the client; and (12) awards in similar
> cases.

Id. at 424 n.3, 434. Overall, "the most critical factor is the degree of success

obtained." Id. at 436.

Gumani's attorneys aver that they have incurred $7,926.88 in fees based on

18.33 hours of work by two attorneys and 3.5 hours of work by a law clerk.

(Vavreck Decl. ¶ 8; Vavreck Decl., Ex. 2.) The Court concludes that the amount

of hours spent by counsel is reasonable.  Additionally, the billing rates are not

outside the range for an experienced attorney in the Twin Cities.

Gumani's attorneys further claim that they have incurred $545.00 in

expenses in prosecuting this litigation.  (Vavreck Decl. ¶ 10.)

### E.    Judgment

When there are multiple defendants who may be jointly and
severally liable for damages alleged by plaintiff, and some but less
than all of those defendants default, the better practice is for the
district court to stay its determination of damages against the
defaulters until plaintiff's claim against the nondefaulters is
resolved.  This is not because the nondefaulters would be bound by
the damage determination against the defaulters, but to avoid the
problems of dealing with inconsistent damage determinations
against jointly and severally liable defendants.

Pfanenstiel Architects, Inc. v. Chouteau Petroleum Co., 978 F.2d 430, 433 (8th Cir.

1992) (citation omitted).

Therefore, the Court will grant Gumani's motion, but will withhold entry

of this default judgment until Gumani's claims against CMS are resolved.  See,

e.g., Armagost v. United States, No. 4:07CV3240, 2010 WL 829178, at *2 (D. Neb.

Mar. 4, 2010) (granting government's motion for default judgment, but withhold

entry of judgment until conclusion of lawsuit).

11

Accordingly, based upon the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED**:

Plaintiff's Amended Motion for Default Judgment [Docket No. 17] is **GRANTED IN PART** and **DENIED IN PART**.  At a later date, as ordered by the Court at the conclusion of this case, Judgment will be entered in favor of Gumani as follows:

1.      Default judgment as to Count 2 is **DENIED**.

2       Default judgment against Defendant Huntington Debt Holdings, LLC, on Count 1: Violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. is **GRANTED**.  Plaintiff is awarded statutory damages of $1,000; attorneys' fees of $7,926.88; and costs of $545.00, for a total award of $9,471.88 against Defendant Huntington.


Dated:  July 10, 2018              s/Michael J. Davis
                                   Michael J. Davis
                                   United States District Court